Merrill **FERGUSON**, et al., Plaintiffs,

v.

Richard E. **LURIE**, et al., Defendants.

No. 89 C 2283.

United States District Court,
N.D. Illinois, E.D.

Oct. 17, 1991.

---

Lawrence R. Samuels, Jacquelyn F. Kidder, Patrick J. Ahern, Ross & Hardies, Chicago, Ill., for plaintiffs.

**364**

David Bayless, McDermott, Will & Emery, Brigid Kennedy, Williams & Montgomery, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

Plaintiffs Merrill Ferguson, Stephen Dils, Gail Dils, and Steven Givot brought this action against defendants Richard Roberts and Roberts & Ellsworth, Ltd. for aiding and abetting an alleged securities fraud scheme committed by defendants Richard Lurie, James Jamieson, and Land Acquisition Co. in connection with Valley Two, a real estate limited partnership. The plaintiffs allege that Roberts and his law firm, Roberts & Ellsworth, Ltd., rendered legal advice and services to Lurie and Jamieson in furtherance of their alleged fraudulent scheme.

In response to various discovery requests made by the plaintiffs, the defendants have refused to produce requested documents and to answer certain deposition questions on the grounds of the attorney-client and attorney work product privileges. Although the parties met, pursuant to Rule 12(k) of the Local Rules of the Northern District of Illinois, to discuss their disagreement, they have been unable to resolve their discovery disputes. The plaintiffs now bring this motion to compel production of the requested documents and to compel Roberts to answer the questions at issue from his deposition. For the reasons stated below, the plaintiff's motion is granted in part and denied in part.

## PLAINTIFF'S MOTION TO COMPEL

### A. *Attorney–Client Privilege*

■ A central concern of the attorney-client privilege is to "[encourage] full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Up-*

john Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). However, since the privilege has the effect of withholding relevant information from the factfinder, a court should only apply it where necessary to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). A number of exceptions have been carved out to limit the application of the attorney-client privilege. The plaintiffs in this case base their motion to compel on several established exceptions to the defendant's claim of the attorney-client privilege. To avoid confusion, each exception will be addressed separately.

1. Exhibit C

■ The plaintiffs claim that document number 800108 [1] does not warrant protection because the defendants waived the attorney-client privilege with respect to this document by showing it to Mr. Jamieson's in-house accountant. Generally, attorney-client communications made in the presence of third parties are not privileged. *In re International Harvester's Disposition of Wisconsin Steel*, 666 F.Supp. 1148, 1156 (N.D.Ill.1987). An exception to this rule is made when the third party's presence is consistent with the parties' intention to keep the communication confidential or the disclosure to the third party is made for the purpose of assisting the attorney in rendering legal advice. *Id.*

■ The key to deciding the applicability of the attorney-client privilege to document number 800108 is the determination of why this document was disclosed to Jamieson's accountant. Neither party has presented any evidence to the Court demonstrating why the document was disclosed. The fact that the accountant works "in-house" for Jamieson suggests that this disclosure may have been made with the intention of keeping the allegedly privileged communication confidential. However, because such an important right is at issue, this Court will

---

1. The defendants have agreed to release the other sixteen documents listed on Exhibit C. The parties agree that while these documents involve attorney-client communications, the at-torney-client privilege has been waived with respect to them because they were disclosed to third parties.

not base its decision solely upon speculation. Therefore, the Court must inspect the document *in camera* in order to determine whether the attorney-client privilege applies to document number 80010.

### 2. Exhibit F

The plaintiffs also claim that the documents listed on Exhibit F cannot be withheld on the basis of the attorney-client privilege because the fiduciary exception applies to them. The fiduciary duty exception is based upon the notion that a communication between an attorney and a client is not privileged from those to whom the client owes a fiduciary duty. *International Insurance Co. v. Peabody International Co.*, 1988 WL 58611, 1988 U.S.Dist. LEXIS 5109 (N.D.Ill. May 27, 1988).

■ The Court must first establish that the defendants owed the plaintiffs a fiduciary duty. The defendants contend, and the Court agrees, that the fiduciary exception cannot possibly apply to communications between Roberts and Double J Enterprises even with respect to Double J Enterprise's purchase and sale of the property at issue in this case. Defendant Roberts has testified, and the plaintiffs have not proven otherwise, that he only represented Double J Enterprises in the transactions with Valley Two, Valley West, and Mesa Citrus Group. Deposition, Roberts, R. at 51, 121, 127, 131, 133, 275–76. Furthermore, the plaintiffs are not partners in Double J Enterprises and they have not presented any arguments as to why Double J Enterprises would owe them a fiduciary duty.

■ The defendants also properly contend that their communications with defendant Lurie in his capacity as promoter of Valley Two and Valley West are not subject to the fiduciary exception. In *Michel v. Gard*, the court considered the responsibilities of an attorney who represented an incorporator of a corporation. 181 Ill. App.3d 630, 536 N.E.2d 1375, 130 Ill.Dec.

164, 169–70, 1380–81 (1989). The Court clearly stated that "in setting up a corporation, an attorney would represent the incorporators, *not* the person who might later buy shares in the corporation." *Id.* (emphasis in original). This Court finds that this rule should be extended to the partnership at issue in this case. Because Roberts owed a fiduciary duty only to Lurie, as his client, and not to the future limited partners in the partnership Lurie created, the defendants have the right to assert the attorney-client privilege with respect to their discussions.

■ The defendants only owe the plaintiffs a fiduciary duty as general partners in Valley Two. In limited partnerships, such as Valley Two, general partners do have a fiduciary obligation to the limited partners. *See Labovitz v. Dolan*, 189 Ill.App.3d 403, 408, 136 Ill.Dec. 780, 784, 545 N.E.2d 304, 308 (1st Dist.1989). Given that the plaintiffs have established the requisite fiduciary relationship between the parties, the Court must consider whether this relationship warrants the disclosure of communications otherwise protected by the attorney-client privilege to the plaintiffs.

The application of the fiduciary exception to the attorney-client privilege has received scant attention in this district.[2] As the plaintiffs suggest, *Garner v. Wolfinbarger* appears to be the leading authority with respect to this doctrine. 430 F.2d 1093 (5th Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). In *Garner*, shareholders of a corporation brought a derivative suit against the corporation and the officers based upon alleged violations of federal and state security laws and commonlaw fraud. *Id.* The Court recognized that a corporation was not automatically barred from asserting the attorney-client privilege just because the stockholders demanded information. *Id.* at 1103. However, it held that:

---

**2.** Indeed, the majority of cases even addressing the fiduciary exception have arisen in the insurance context rather than in the context of partnerships and corporations. *See, e.g., International Insurance Co.*, 1988 WL 58611, 1988 U.S.Dist. LEXIS 5109; *A. Kush & Associates Ltd. v. Wein Geroff Enterprises*, Nos. 85–493, 87–2164, *slip op.*, 1986 WL 15120 (N.D.Ill. December 30, 1986).

"where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance." *Id.* at 1103–04.

The plaintiffs suggest that this Court, like the court in *Abbott v. The Equity Group,* Nos. 86–4186, 86–3271, 86–3593, *slip op.,* 1988 WL 86826 (E.D.La. August 10, 1988), should extend this holding to partners' suits against the partnership and other partners. In *Abbott,* the court determined that the relationship between partners and partnerships was so much stronger than that between shareholders and corporations that there should be no bar preventing the disclosure of privileged communications. *Id.* Therefore, the court held that partners in that case did not even need to show good cause, as required in *Garner,* before obtaining otherwise privileged documents. *Id.*

■ This Court recognizes that the plaintiffs in this case should be entitled to the same opportunity to obtain information as the plaintiffs in *Garner.* Although they are limited partners in a partnership, rather than shareholders in a corporation, they share a similar right to inspect partnership books and obtain information regarding partnership affairs. Ill.Ann.Stat. ch. 106½, ¶ 53.[3] Therefore, in order to protect their interests, as well as those of the partnership and the public, limited partners should be entitled to obtain information in certain circumstances otherwise protected by the attorney-client privilege.

The Court still finds that limited partners should not be exempt from *Garner*'s requirement of showing good cause before obtaining information as the plaintiffs suggest. This Court agrees with the *Abbott* court's observation that partners and partnerships share a stronger relationship than

shareholders and corporations. However, the relationship between general partners and a partnership and, as in this case, limited partners and a limited partnership are not the same. For example, unlike general partners who can be held jointly and severally liable for partnership actions and debts, *see* Uniform Partnership Act, Ill.Ann.Stat. ch. 106½, ¶ 15, limited partners enjoy limited liability as long as they do not play a role in the control of the business. Uniform Limited Partnership Act, Ill.Ann.Stat. ch. 106½, ¶ 50.

■ Given the important differences between general and limited partners, this Court finds that limited partners should not be excepted from *Garner*'s requirement of showing good cause before otherwise privileged documents are released to them. In the instant case, the plaintiffs have not produced any evidence showing good cause why the attorney-client privilege should not be invoked against their document requests and proposed deposition questions. For this reason, as well as the plaintiffs' failure to show the requisite fiduciary duty with respect to communications between Roberts and Double J Enterprises, and Roberts and Lurie, in his capacity as a promoter, the Court denies the plaintiff's motion to compel production of the items listed in Exhibit F.

### 3. Exhibit G

■ The plaintiffs assert that the documents listed on Exhibit G cannot be withheld from discovery because they fall within the crime-fraud exception to the attorney-client privilege. The attorney-client privilege is subject to this exception when the client seeks legal advice or services in furtherance of the commission of a crime or fraud. *United States v. Zolin,* 491 U.S. 554, 562–63, 109 S.Ct. 2619, 2625–26, 105 L.Ed.2d 469 (1988) (citing 8 Wigmore § 2298). The crime-fraud exception comports with the Supreme Court's declaration that the attorney-client privilege must "cease to operate at a certain point, name-

---

**3.** The court in *Garner* noted that shareholders had a limited right to inspect corporate books. 430 F.2d at 1104 n. 21. Shareholders and limited partners' right to information is also similar to those of a general partner in a general or limited partnership.

ly, where the desired advice refers *not to prior wrongdoing,* but to *future wrongdoing." Id.* at 562–63, 109 S.Ct. at 2626 (emphasis in original).

In this case, the plaintiffs assert that in order to invoke the crime-fraud exception and obtain the documents in question they must only demonstrate a reasonable belief that the objective of the attorney-client communication was criminal or fraudulent. *See Sencon Systems, Inc. v. W.R. Bonsal Co.,* No. 85–8250, *slip op.,* 1987 WL 8603 (N.D.Ill. March 23, 1987). The defendants, on the other hand, counter that this reasonable belief test is only employed when determining whether a court should conduct an *in camera* review of the disputed documents, rather than when deciding to release the documents as the plaintiffs suggest. *See Zolin,* 491 U.S. 554, 109 S.Ct. 2619.

■■■ This Court agrees with the defendants' contention that the reasonable belief test is not the appropriate standard for determining whether to release documents under the crime-fraud exception. In *Zolin,* the Supreme Court highlighted its belief that *"in camera* inspection is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure." 491 U.S. at 572 (citing Fried, Too High a Price for Truth: The Exception to the Attorney–Client Privilege for Contemplated Crimes and Frauds, 64 N.C.L.Rev. 443, 467 (1986)). Although the Supreme Court did not determine what the appropriate standard for publicly disclosing documents would be, the difference the Court saw between *in camera* inspection and public disclosures suggests that a higher standard would be required for public disclosures.

■■■ The Court cannot review *in camera* nor release the documents requested in Exhibit C because the evidence presented by the plaintiffs does not meet the requirements of the reasonable belief test, let alone a higher standard of proof. The plaintiffs rely solely upon the allegations in their complaint to demonstrate the reasonableness of their belief that the defendants used their attorney-client communications

in furtherance of their alleged fraudulent scheme. However, as the defendants point out, such allegations cannot be relied upon to establish the requisite prima facie case. This Court has specifically stated that allegations in pleadings "are not evidence to make a prima facie case." *Thacker Engineering, Inc. v. Chicago Housing Authority,* 1988 WL 84714, 1988 U.S.Dist. LEXIS 8857 (N.D.Ill. August 11, 1988). Therefore, because the plaintiffs have not provided this Court with the evidence required for *in camera* review, let alone public disclosure, the Court denies the plaintiffs motion to compel with respect to the items listed in Exhibit C.

### B. *Attorney Work Product Doctrine*

■■■ Under Federal Rule of Civil Procedure 26(b)(3), documents prepared in anticipation of litigation are protected from disclosure. The mere contingency of litigation alone is not enough to warrant protection under the work product doctrine. Rather, the primary motive behind the creation of the document or investigation must be to aid in the adversarial trial process itself. *See EEOC v. Commonwealth Edison,* 119 F.R.D. 394, 395 (N.D.Ill.1988); *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C.1982). Furthermore, the party demanding production of such information also must demonstrate that undue hardship would be suffered if that party is unable to review the material or to obtain equivalent materials by other means. *Ag Fur Industrielle Elektronik v. Sodick Co.,* 1990 WL 103655, 1990 U.S.Dist. LEXIS 8281 (N.D.Ill. June 19, 1990).

In this case, the plaintiffs claim that the documents listed on Exhibit J should not be protected by the work product doctrine because they were not prepared in anticipation of litigation. In support of this assertion, the plaintiffs argue that the documents in question were prepared before the commencement of this suit and that the defendants have not demonstrated that the documents were prepared in anticipation of any other litigation in existence at that time. In response, the defendants assert

that document numbers 800120 and 800122–23 were prepared "in anticipation of threatened litigation by the City of Mesa against Valley Two over dead brush that had accumulated on the property."[4] Defendants' Brief in Opposition to Plaintiffs' Motion to Compel at 14.

■ The plaintiffs' and the defendants' arguments suggest that they do not understand the proper scope of the attorney work product doctrine. The work product doctrine does not apply here because, as the defendants admit, the two documents in question were not prepared in contemplation of the present litigation. As the court stated in *Horizon Federal Savings Bank v. Selden Fox & Associates*, Federal Rule of Civil Procedure 26 only applies to the litigation at issue, rather than other litigation also conducted by the attorney in the case. 1988 WL 77068, 1988 U.S.Dist. LEXIS 7498 (N.D.Ill. July 19, 1988). Hence, because the work product doctrine does not apply to document numbers 800120 and 800122–23, the plaintiffs' motion to compel production of these documents is granted.

## CONCLUSION

For the reasons stated above, the plaintiff's motion to compel is granted in part and denied in part. The defendants are ordered to release document numbers 800120 and 800122–23 to the plaintiffs. The defendants also are ordered to submit document number 800108 to the Court for an *in camera* inspection to determine the applicability of the attorney-client privilege to this document.

---

**4.** The defendants agree with the plaintiffs that the remaining seven documents listed on Exhibit J are not protected by the attorney work product doctrine. However, as already discussed, these documents are protected by the attorney-client privilege. Therefore, the defendants need not release these documents to the plaintiffs.