**LIFEWISE MASTER FUNDING, et al., Plaintiffs,**

v.

**TELEBANK, n/k/a E*Trade Bank, Defendants.**

**No. 00–CV–495–B.**

United States District Court, D. Utah, Central Division.

Feb. 6, 2002.

Brent V. Manning, Jack M. Morgan, Jr., Mara K. Featherstone, Manning Curtis Bradshaw & Bednar LLC, Salt Lake City, Utah, for Plaintiffs.

Spencer E. Austin, Erik A. Christiansen, Elizabeth S. Whitney, Parsons Behle & Latimer, Salt Lake City, Utah, for Defendants.

## MEMORANDUM AND ORDER

BOYCE, United States Magistrate Judge.

The defendant, Telebank, n/k/a E*Trade Bank (hereinafter E*Trade), made a motion on December 2, 2000 for a protective order requiring plaintiffs Lifewise Master Funding, LLC and Life Wise Family Financial Security Inc. (Lifewise) and plaintiff's counsel, Manning, Curtis, Bradshaw and Bednar, LLC, to return copies of documents Telebank contends were protected by the Attorney/Client privilege or work product privilege based on a claim that the documents, produced as part of E*Trade's Rule 26(a) F.R.C.P. initial disclosures, were inadvertently produced.

The first of the contested documents were produced on October 26, 2000. E*Trade contends that a careful preproduction review was made to assure only non-privileged documents were produced. A privilege log of allegedly privileged material was made. In the course of dividing the documents to be produced into categories of privileged and non-privileged and making copies, the privileged documents were produced to Lifewise.

Counsel for Lifewise notified E*Trade by letter on October 30, 2000 that some privileged documents may have been produced, but Lifewise claimed any privilege was waived. E*Trade's counsel asserted there was no waiver of any privilege and provided plaintiff with a privilege log. It was later determined that part of the alleged privileged documents had not been listed on the original privilege log and a new log was provided. Some of the documents had been labeled by E*Trade as privileged or were produced material prior to their transfer to Lifewise. The privilege log does not correspond with the E*Trade's claim of privilege. E*Trade advised Lifewise counsel that Rebecca Gonzales, an employee of E*Trade's counsel, "mixed up" the boxes she received from the copy firm. Lifewise challenged that assertion by E*Trade because of alleged inconsistencies in the privilege logs and those

documents produced and not produced. The final version of the privilege log (Log # 2) was not received until November 2, 2000. From these circumstances, Lifewise contends E*Trade had not completed its privilege analysis and was generally negligent in handling alleged privilege material.

█ Some of the documents that were not marked privileged were matters that would appear to be within a lawyer/client privilege or work product privilege (See document ET003186).[1] It is not necessary that a document be labeled as privileged in order for it to be subject to an Attorney/Client or work product privilege, if the document otherwise fits within such a privilege. On the other hand, labeling a document as privileged does not meet the privilege claimants' burden of establishing the privilege claim. The labeling may alert a recipient of the document of a possible privilege claim and thereby invoke ethical inquiry by the recipient to determine if the document was privileged. However, the party claiming the privilege must still show the privilege is applicable.

E*Trade in its memoranda and at argument, made an initial suggestion that Lifewise counsel had acted unethically as to the handling of the original document production made on October 26, 2000, which were produced pursuant to Rule 26(a)(1) F.R.C.P. It is apparent E*Trade's argument is without merit on this point and that it has not carried its burden to show unethical conduct by Lifewise's counsel or seek any kind of relief based on such a contention.

█ The United States District Court for Utah has adopted the Utah Rules of Professional Conduct as promulgated by the Utah Supreme Court as the standard for attorneys practicing in this Court. *United States v. Ta,* 938 F.Supp. 762 (D.Utah 1996). The rules however are subject to interpretation by this Court DuCivRule 83–1.1(h). The commentary to the *Utah Rules of Professional Responsibility* has not been expressly adopted by this Court, *Bouge v. Smith's Management Corp.,* 132 F.R.D. 560, 564 (D.Utah 1990); *Weider Sports Equipment Co. Ltd. v. Fitness First, Inc.,* 912 F.Supp. 502 (D.Utah 1996). The interpretation given to the Utah Rules of Professional Conduct, by the Utah Supreme Court or the Utah State Bar, will be given great deference and respect and will be followed absent a different federal need or standard or particular circumstance related to federal litigation or where the interpretation given by Utah authorities is deemed clearly erroneous. Of course, the rulings of the Court of Appeals for the Tenth Circuit are binding on this Court and must govern this Court's decisions where applicable. *United States v. Spedalieri,* 910 F.2d 707 (10th Cir.1990).

█ *Utah Ethics Opinion,* 99–01, Utah State Bar Ethics Committee, requires that a party who receives an opposing parties communications subject to the Attorney/Client privilege, not intentionally waived, should advise opposing counsel. That was done in this case by Lifewise counsel who sent a letter October 30, 2000 to opposing counsel for E*Trade advising that possible privileged documents had been received. Opinion 99–01, *Id.* advises that once the fact of disclosure is made, the parties may turn to resolution of the legal implications of the disclosure and whether a waiver has occurred. Lifewise counsel advised that Lifewise would assert a waiver, which in this case, the Court finds could be and was reasonably asserted in good

---

1. Lifewise contends the communication to a lawyer by one who seeks the assessment by the lawyer to get out from under the contract with Lifewise could not be privileged. However, the document seeks the lawyers legal assistance and assessment as to whether termination can be legally effected. Lifewise has not made out its claim that business advice was the reason for the communication in document ET003186.

Business communications by and to an attorney are not necessarily protected, *United States v. Puckett,* 692 F.2d 663 (10th Cir.1982); *Young v. Taylor,* 466 F.2d 1329, 1333 (10th Cir.1972), but business positions may be communicated to an attorney for legal action or advice. See *Motley v. Marathon Oil Co.,* 71 F.3d 1547 (10th Cir.1995) (matters for attorney preparation were not for business advice and the Court could not say the communication was not within the Attorney/Client privilege). The claim of Attorney/Client privilege must be established by the party asserting it. *United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir.1974); *In the Matter of Grand Jury Subpoena Duces Tecum,* 697 F.2d 277 (10th Cir.1983). At this point, the Court concludes the above document is privileged.

faith. Bates numbers to the possible privileged documents were provided by Lifewise counsel to E*Trade's counsel. Counsel for Lifewise also advised he "would refrain from reviewing the documents until we come to an agreement or we obtain a judicial decision regarding the documents." This conduct was in conformity with Utah Ethics Opinion 99–01. It was a scrupulous and commendable performance. E*Trade's assertion of unethical behavior is without merit or justification.[2]

■ The issue as to the E*Trade 26(a)(1) F.R.C.P. documents produced on October 26, 2000 is one of waiver. This case involves a suit for breach of contract and related conduct and is brought under 28 USC § 1332. State law is the rule of decision, therefore as to the Attorney/Client privilege and the issue of waiver, Utah state law provides the rule of decision. *White v. American Airlines*, 915 F.2d 1414 (10th Cir.1990); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997). See also *Liew v. Breen*, 640 F.2d 1046 (9th Cir.1981); *Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3rd Cir. 1994); *Ellis v. United States*, 922 F.Supp. 539 (D.Utah 1996). In this case, Utah law is the law of the state applicable under 28 USC § 1332 and governs the Attorney/Client and waiver issue.

■ The claim of work product privilege is, however, governed by federal law. *Frontier Refining Inc. v. Gorman–Rupp Co.*, 136 F.3d 695, 702 n. 10 (10th Cir.1998) (Wyoming law governed the Attorney/Client privilege and waiver, federal law governs the work product issue). See Rule 26(h)(3) F.R.C.P.; *United Coal Co. v. Powell Const. Co.*, 839 F.2d 958 (3rd Cir.1988).

Initially, two issues govern the question before the Court: (1) was the communication disclosed and (2) has the privilege been waived if the material is privileged.

In order for E*Trade to obtain the return of its documents it must show that each document was subject to the Attorney/Client or work product privilege. Since jurisdiction in this case is based on 28 USC § 1332, pursuant to Rule 501. F.R.E., Utah law governs the issue of whether the documents are privileged. With regard to the intercorporate Attorney/Client privilege, Utah Rule of Evidence (URE), 504 applies.[3] Under that rule a client may be a corporation which is rendered professional legal services by a lawyer or where the corporation consults a lawyer with a view to obtaining legal services. *Id.* Subsection (1). See also *Upjohn Co. v. United States*, 449 U.S. 383, 389–99, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Upjohn was cited by the Utah Supreme Court in *Doe v. Maret*, infra.

Rule 504, U.R.E.(b) provides:

*General Rule of Privilege.* A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client between the client and the client's representatives ...

■ Whether a privilege has been waived must be considered under Rule 507, U.R.E.; *Doe v. Maret*, 984 P.2d 980 (Utah 1999) (volunteering disclosure of information at discovery deposition waived privilege. Intent is not necessarily required). The Attorney/Client privilege applies only where the communication is confidential and relates to the legal services. See also Edward L. Kimball and Ronald N. Boyce, *Utah Evidence Law*, p. 5–9 (1996). Note, *Confidentiality and the Lawyer–Client Relationship*, 1980 Utah L.Rev. 765.

Rule 507(a) U.R.E. provides:

---

2. The *Utah State Bar Ethics Committee* has rejected the position of the *ABA Formal Opinion* 92–368 which requires return of the documents. This Court agrees with the Utah Ethics Committee's approach for purposes of material produced in the discovery process. To apply the ABA opinion to the discovery process unnecessarily complicates the judicial discovery process, lends itself to contests over what was produced or returned. The approach of the of the Utah Ethics Committee is a reasonable and efficacious approach.

3. In *Doe v. Maret*, infra, the Utah Supreme Court said Utah Code Ann. § 78–24–8(2) (1996) also applied as a part of the Utah law on Attorney/Client privilege. That statute has no application in this case.

A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or a predecessor while holder of the privilege voluntarily discloses or consents to the disclosure of any significant part of the matter or communication, or fails to take reasonable precautions against inadvertent disclosure.

The privilege may be waived by the client, *Doe, supra* at p. 982; *In re Young's Estate,* 33 Utah 382, 385, 94 P. 731, 732 (Utah 1908).

 The burden of proof to establish the Attorney/Client privilege is on the privilege claimant, *In re Foster,* 188 F.3d 1259, 1264 (10th Cir.1999). *In re Santa Fe International Corporation,* 272 F.3d 705, n. 5, (5th Cir.2001) and the claimant also has the burden to show the privilege was not waived. *Zolin, infra* p. 1411.

██ Utah law, Rule 507(a), U.R.E. expressly recognizes a waiver of a privilege where the person holding the privilege "fails to take reasonable precautions against inadvertent disclosure." In a case prior to the adoption of Rule 507, U.R.E., *Gold Standard, Inc. v. American Barrick Resources,* 805 P.2d 164 (Utah 1990), the court discussed inadvertent disclosure as a waiver of the work product doctrine. The court held a waiver had occurred by inadvertent disclosure and the failure to take timely action to retrieve the document. The court referred favorably to Attorney/Client privilege cases and held the standard applied to work product claims as well. The court cited *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103 (S.D.N.Y.1985) aff'd. 799 F.2d 867 (2nd Cir.1986) and said five elements were to be evaluated in determining whether a waiver had occurred by inadvertent disclosure:

1) the reasonableness of the precautions to prevent inadvertent disclosure; 2) the time taken to rectify the error; 3) the scope of the discovery; 4) the extent of the disclosure; and 5) the "overreaching issue of fairness."

This standard is comparable to most federal jurisdictions. Paul R. Rice, *Attorney–Client Privilege in the United States,* 2nd Ed. 9:70 (1999).[4] This court has also drawn a distinction between inadvertent disclosure and disclosure which was advertent and intended where the person making discovery was merely unaware of the legal consequences or nature of the document produced. *Transonic Systems Inc. v. Non–Invasive Medical Tech.,* 192 F.R.D. 710 (D.Utah 2000). In the latter situation the party making production has fully waived the Attorney/Client or work product privilege. *Id.* There is no reason for this Court to conclude there is any incompatibility between the reference to inadvertent disclosure in Rule 507, U.R.E, and the Utah Supreme Court's extensive discussion in *Gold Standard, infra,* and the more limited reference in *Doe v. Maret, supra,* at 986–87.

In this case, as to the initial disclosure,[5] it was preceded by careful segregation of documents produced from those intended to be produced pursuant to Rule 26(a)(1) F.R.C.P., E\*Trade acted immediately on being made aware of the disclosure. The disclosure occurred when copies of documents were made and a paralegal apparently sent the wrong set with other properly disclosed documents. Although the number of documents was not extensive, there were enough in the exchange that the oversight was not gross.

The disclosure of the privileged "A" documents was significant, and the substance made known cannot be eradicated. The return of the documents would not prevent

---

4. It has been suggested that in the Tenth Circuit inadvertent disclosure is an absolute waiver based on *United States v. Ryans,* 903 F.2d 731, 741 n. 13 (10th Cir.1990). However, the case did not treat the issue and the footnote cited *does not* address inadvertent disclosure except to say it may constitute a waiver. *Id.* The *Ryans* footnote is too slim a statement on which to find an absolute waiver from inadvertent disclosure. In any event, the law in the present case is governed by Utah law.

The District of Kansas has adopted the same five factor analysis accepted by the Utah Court in *Gold Standard, supra* p. 805 P.2d at 171 relying on *Lois Sportswear, infra.* See *Kansas City Power & Light Co. v. Pittsburg & Midway Coal Co.,* 133 F.R.D. 171 (D.Kan.1989). Also, *Shriver v. Baskin–Robbins Ice Cream Co., Inc.,* 145 F.R.D. 112, 115 (D.Colo.1992).

5. Referred to by the parties as the "A" documents.

plaintiff from using the substance of the information disclosed as distinct from the documents themselves. Rice, *supra*. Under these circumstances fairness dictates return of the documents. This conclusion is not affected by the difference in the privilege log and what is *now* before the Court as the contested documents.

However, that does not end the issue. E*Trade must still have a legitimate Attorney/Client or work product privilege.[6]

 The work product privilege protects against invading the privacy of an attorney's course of preparation and where the privilege exists the burden is on the party seeking to invade the privilege to establish adequate reasons for production. *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *United States v. Colorado Supreme Court*, 189 F.3d 1281 (10th Cir. 1999). However, the party asserting the work product privilege has the burden of showing the applicability of the doctrine. *Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042 (10th Cir.1998); *Barclaysamerican Corp. v. Kane*, 746 F.2d 653 (10th Cir.1984). The documents must be prepared for the client in anticipation of litigation. *Grand Jury Proceedings*, *supra*, p., 1042, *City Consumer Srvs. v. Horne*, 100 F.R.D. 740, 746 (D.Utah 1983). The federal standard governs the work product privilege even in diversity cases. *Frontier Refining Inc. v. Gorman–Rupp, Inc.*, 136 F.3d 695 (10th Cir.1998). A mere allegation of its application is insufficient. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir.1995). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal

impressions, it does not protect facts concerning the creation of work product or facts within the product." *Id.* The work product privilege is not the same as the Attorney/Client privilege. *Caldera v. Microsoft Corp.*, 181 F.R.D. 506 (D.Utah 1998).

 Based on the above considerations and standards the Court finds the following "A" documents, claimed as privileged by E*Trade, are not subject to the Attorney/Client or work product privilege because the documents for which the Attorney/Client privilege was claimed are not shown to be confidential or for legal advice as distinct from business advice. As to the work product privilege, it is not shown the documents were made in anticipation of litigation, nor adequately identified as to the preparer, or would disclose the attorney's mental impression, or were not mere business records. The following "A" documents are not subject to return.[7]

As to the protected "A" documents, Lifewise has claimed the crime/fraud exception to the Attorney/Client privilege applies.[8] Rule 504(d)(1), Utah Rules of Evidence, provides:

> *Furtherance of crime or fraud.* If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud …

See also *State v. Carter*, 578 P.2d 1275 (Utah 1978). The crime/fraud exception has been applied in this circuit to the work product privilege as well as the Attorney/Client privilege. *In re Grand Jury Proceedings, (Vargas)*, 723 F.2d 1461, 1467 (10th Cir.1983).

---

6. The waiver by inadvertent disclosure also applies the same standard to the work product privilege. *Gold Standard, supra; United States v. Zolin*, 809 F.2d 1411 (9th Cir.1987) on appeal Supreme Court. 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). See also, *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3rd Cir.1991); *United States v. Gangi*, 1 F.Supp.2d 256, 266 (S.D.N.Y.1998).

However, the work product privilege is a separate privilege and grounded on different considerations. See *Tsai–Son Nguyen v. Excel Corp.*, 197 F.3d 200, 210 (5th Cir.1999). Rule 26(b)(3) F.R.C.P. governs the work product privilege, but disclosure to an adversary can waive the work

product privilege. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234–35 (2nd Cir.1993).

7. See attachment labeled: "A" Documents Not Privileged.

8. The crime/fraud doctrine generally applies as an exception to the work product privilege. *In re John Doe Corp.*, 675 F.2d 482, 491–92 (2nd Cir. 1982); Edna Silan Epstein, *The Attorney/Client Privilege and the Work Product Doctrine*, 4th Ed. pp. 590–593 (2001), but the Court finds no well presented basis for a crime fraud exception as to work product.

*In re Grand Jury Subpoenas, infra,* 144 F.3d at p. 660.

Fraud has a fairly exact meaning under Utah law and requires more than merely bad faith or breach of contract. In *Franco v. LDS Church,* 21 P.3d 198 (Utah 2001) the Utah Supreme Court restated the elements of fraud under Utah law:

> To establish fraud under Utah law, a party must prove by clear and convincing evidence each of the following elements:
>
> "(1) That a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representer either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage." *Mikkelson v. Quail Valley Realty,* 641 P.2d 124, 126 (Utah 1982) (emphasis added) (quoting *Pace v. Parrish,* 122 Utah 141, 144–45, 247 P.2d 273, 274–75 (1952)).

■ In applying the Utah fraud standard to the Attorney/Client privilege under Rule 504(d)(1) U.R.E., it is apparent the consultation must go beyond consulting an attorney as to whether there are reasonable means to curtail a prior legal relationship or to determine if a contract termination would be possible. In this case, plaintiffs, Lifewise Master Funding and Lifewise Family Financial Security, have not made out a basis for avoiding the proper Attorney/Client privilege on the basis of the crime fraud exception. *United States v. White,* 887 F.2d 267, 271 (D.C.Cir.1989). The Utah Supreme Court nor the United States has specified the quantum of evidence necessary to meet the crime/fraud exception. *In re General Motors Corp.,* 153 F.3d 714, 716 (8th Cir.1998). The communication at issue must be for the purpose of crime or fraud. *Id.* This clearly has not been established by Lifewise as to the various communications. A broad overall claim as to all the communications as being within the crime/fraud exception cannot be accepted. The Tenth Circuit's opinion in *In re Grand Jury Subpoenas,* 144 F.3d 653 (10th Cir.1998) finding the crime fraud exception to be applicable does not support the exception in this case. *Id.* p. 660. See also *Motley v. Marathon Oil Co.,* 71 F.3d 1547 (10th Cir.1995) (crime/fraud exception inapplicable); *Transonic Systems Inc. v. Non–Invasive Medical Tech., supra.*

Therefore, Lifewise's claim of an exception to the Attorney/Client and work product privileges, for crime or fraud, is not sustained.

Subsequent to E\*Trade's initial motion for a protective order to obtain return of the "A" documents, a second issue of inadvertent release of allegedly privileged documents was raised. This pertains to the so called "intermingled documents." These documents were produced, but had not been identified as privileged in the initial privilege review. E\*Trade was not aware of the status and production of privileged documents until Lifewise gave notice of what was produced. One Hundred Sixty Four pages were involved, but now E\*Trade contends only 13 pages were subject to the Attorney/Client or work product privilege.

As to these documents the Court finds that E\*Trade has not carried its burden of showing the documents were actually inadvertently produced or that reasonable precautions were taken to prevent the disclosure of any privileged materials. See Rice, *supra, Attorney/Client Privilege in the United States,* § 9.75; *F.C. Cycles Intern. v. Fila Sport,* 184 F.R.D. 64, 75 (D.Md.1998). Under the standards in *Gold Standard, Inc. v. American Barrick Resources, supra,* E\*Trade's motion to return the commingled documents must be rejected.

■ In addition, the Court concludes that as to the intermingled documents claimed protected by the Attorney/Client privilege, E\*Trade has not shown the documents were kept confidential for legal advice or that business matters were not the purpose other than legal advice. E\*Trade has not met its burden to sustain an Attorney/Client or work product privilege. Therefore, as to the intermingled documents, they need not be returned and no privilege is applicable.

306

### Conclusion

E\*Trade is entitled to the return of the documents previously identified as "A" documents except as identified by the Court as those excluded due to the failure of the claim of Attorney/Client and work product claims. The commingled documents need not be returned.

#### "A" Documents Not Privileged

| | Beginning # | End # |
|------|-------------|-------------|
| 2. | ET000158 | ET000158 |
| 5. | ET000253 | ET000254 |
| 6. | ET000260 | ET000260 |
| 8. | ET000310 | ET000310 |
| 9. | ET000440 | ET000449.1 |
| 11. | ET000483 | ET000483 |
| 14. | ET000539 | ET000549 |
| 22. | ET000926 | ET000927 |
| 24. | ET000929 | ET000930 |
| 29. | ET000952 | ET000954 |
| 30. | ET000983 | ET000987 |
| 40. | ET001033 | ET001033 |
| 41. | ET001034 | ET001034 |
| 42. | ET001059 | ET001060 |
| 43. | ET001067 | ET001067 |
| 45. | ET001082 | ET001082 |
| 55. | ET003196 | ET003197 |
| 56. | ET003198 | ET003198 |
| 58. | ET003201 | ET003201 |
| 59. | ET003247 | ET003251 |
| 60. | ET003258 | ET003259 |